|   |   |
|---|---|
| KIM COZZENS, JESSE GOLDEN, JESSICA HINTON, URSULA MAYES, SARA UNDERWOOD, and TIFFANY TOTH GRAY,<br><br>    Plaintiffs,<br><br>    v.<br><br>DAVEJOE RE, LLC, DAVEJOE, LLC, and MONKEYTOES, LLC d/b/a KASHMIR GENTLEMEN'S CLUB,<br><br>    Defendants. | Civil No. 17-11535 (NLH/JS)<br><br>**OPINION** |

**APPEARANCES:**

JONAS PALMER MANN
BARON & BUDD, P.C.
ENCINO PLAZA
15910 VENTURA BLVD., STE. 1600
ENCINO, CA 91436

    *Attorney for Plaintiffs Kim Cozzens, Jessica Hinton, Ursula Mayes, Sara Underwood, and Tiffany Toth Gray.*

**HILLMAN, District Judge**

    This case concerns the unauthorized use of particular models' likenesses in advertising. Presently before the Court is Plaintiffs' Motion for Default Judgment. Defendants have not responded to this motion. For the reasons stated herein, it will be granted.

## BACKGROUND

This Court takes its facts from Plaintiffs' complaint. According to the complaint, Plaintiffs Kim Cozzens, Jesse Golden, Jessica Hinton, Ursula Mayes, Sara Underwood, and Tiffany Toth Gray are professional models and actresses. Defendants, DaveJoe RE, LLC, DaveJoe, LLC, and MonkeyToes, LLC are all limited liability companies in and citizens of New Jersey and operate Kashmir Gentlemen's Club – a strip club – located at 3926 North Delsea Drive, Vineland, New Jersey. Plaintiffs allege that, in addition to the property they operate in Vineland, Defendants collectively operate - and control the content of - two social media accounts, one on Facebook and one on Twitter, as well as a website.

Plaintiffs allege that their careers are based on the commercialization of their image and that their reputation has a direct effect on the commercial value of their image. In other words, Plaintiffs allege they carefully screen and choose the commercial endeavors to which they attach their likeness. However, Defendants – between November 11, 2011 and September 17, 2012 – have used each of the Plaintiffs' images at least once, without their consent, in advertising published on their Facebook page.[1] Plaintiffs allege this use was knowing, willful,

---

[1] Toth's image was originally published on Defendants' Facebook page on November 11, 2011, Underwood's on November 14, 2011,

2

and intentional and was for the purpose of driving traffic to their strip club and increasing the revenue of their business.

Each Plaintiff alleges four claims under state and federal law.  First, Plaintiffs allege Defendants' actions constituted misappropriation of their likeness under New Jersey common law.  Second, Plaintiffs allege Defendants' actions constituted unfair competition and/or false endorsement under the Lanham Act, codified at 15 U.S.C. § 1125(a).  Third, Plaintiffs allege the same claim for unfair competition and/or false endorsement under New Jersey Statute § 56:4-1.  Finally, Plaintiffs assert a New Jersey common law unfair competition claim.

The complaint was filed on November 10, 2017 and it was served on Defendants on November 17, 2017.  Defendants have failed to appear in the action, besides this Court's receipt of a letter from David Glassman, a managing member or former managing member of the Defendant entities.  The Clerk entered default on April 19, 2018.  The instant motion for default judgment was filed on November 5, 2018.  As mentioned supra, no opposition was filed.[2]

---

Mayes' and Hinton's on January 24, 2012, Golden's on December 1, 2011, and Cozzens' on September 17, 2012.

[2] The letter from Glassman is not an opposition and contains no legal argument.  It merely states that Glassman has attempted to retain legal counsel.

3

## ANALYSIS

**A.   Subject Matter Jurisdiction**

This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over the New Jersey state law claims pursuant to 28 U.S.C. § 1367.

**B.   Personal Jurisdiction**

In addition to subject matter jurisdiction, this Court must also be satisfied it possesses personal jurisdiction over the Defendants.  See U.S. Life Ins. Co. v. Romash, No. 09-3510 (GEB), 2010 U.S. Dist. LEXIS 57276, at *3-4 (D.N.J. June 9, 2010) ("Before entering default judgment, the court must address the threshold issue of whether it has subject matter jurisdiction and personal jurisdiction over the parties." (citing Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986)).

It appears this Court possesses personal jurisdiction over Defendants.  Plaintiffs allege Defendants are New Jersey limited liability companies – all operating out of the same location in Vineland, New Jersey.  This Court is satisfied personal jurisdiction over the Defendants exists in this case.[3]

---

[3] To the extent applicable, this Court additionally notes that New Jersey has authorized personal jurisdiction to the "outermost limits permitted by the United States Constitution." Avdel Corp. v. Mecure, 277 A.2d 207, 209 (N.J. 1971).  The

**C. Default**

The first step in obtaining a default judgment is the entry of default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the Clerk must enter the party's default." FED. R. CIV. P. 55(a). The Clerk entered default against Defendants on April 19, 2018.

**D. Default Judgment**

"Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading." Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assocs. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)). But, a party seeking default judgment "is not entitled to a default judgment as of a right." Franklin v. Nat'l Maritime Union of Am., No. 91-480, 1991 U.S. Dist. LEXIS 9819, at *3-4 (D.N.J. 1991) (quoting 10 Wright, Miller &

---

Constitution authorizes personal jurisdiction "under two distinct theories, a defendant's general or claim-specific contacts with the forum," when a defendant is foreign to the forum. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001). Here, personal jurisdiction may be exercised under the general jurisdiction theory because Defendants' operations of a strip club in Vineland, New Jersey create contacts that are "continuous and systematic" so that it could be reasonably stated that Defendants have "purposefully avail[ed themselves] of the privilege of conducting activities within" New Jersey. Id. (citations and internal quotation marks omitted).

Kane, Federal Practice and Procedure § 2685 (1983)), aff'd, 972 F.2d 1331 (3d Cir. 1992). The decision to enter a default judgment is "left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

Although every "well-pled allegation" of the complaint, except those relating to damages, are deemed admitted, Comdyne I. Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990), before entering a default judgment the Court must decide whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law," Chanel, 558 F. Supp. 2d at 535 (citing Directv, Inc. v. Asher, No. 03-1969, 2006 U.S. Dist. LEXIS 14027, at *3 (D.N.J. Mar. 14, 2006)). "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). If a review of the complaint demonstrates a valid cause of action, the Court must then determine whether plaintiff is entitled to default judgment.

### a. Whether Plaintiff has Stated a Cause of Action

The Court will determine whether each claim asserted by

Plaintiffs properly states a cause of action.

### i. Misappropriation of Likeness

To establish a prima facie case of misappropriation of likeness under New Jersey common law, the plaintiff must establish four elements: "(1) the defendant appropriated the plaintiff's likeness, (2) without the plaintiff's consent, (3) for the defendant's use or benefit, and (4) damage." Hart v. Elec. Arts, Inc., 740 F. Supp. 2d 658, 665 n.5 (D.N.J 2010).

Here, Plaintiffs' complaint alleges the Defendants used each of their likenesses on their Facebook page and that the use was without their consent. (See also ECF Nos. 12-2 – 12-8.) Plaintiffs' also allege, as required, that their likenesses were used for a predominately commercial purpose – here to draw in business to Defendants' strip club. See Castro v. NYT Television, 851 A.2d 88, 97 (N.J. Super. Ct. App. Div. 2004) ("Under New Jersey common law, defendant[s] would be liable for the tort of misappropriation of likeness only if defendant's use of plaintiff's likeness was for a predominantly commercial purpose, i.e., if defendant was seeking to capitalize on defendant's likeness for purposes other than the dissemination of news or information." (alteration in original and citations omitted)). Finally, Defendants have adequately alleged damages, which, in this case was the incursion on the exclusive use of their likenesses. Plaintiffs have adequately stated a claim

here.

### ii. Federal Statutory Unfair Competition and False Endorsement

Plaintiffs also alleged unfair competition and false endorsement under 15 U.S.C. § 1125(a). After assessing the case law and Plaintiffs' allegations (as described in-depth, infra), it appears Plaintiffs only assert a specific unfair competition claim, that of false endorsement. Thus, this Court will only examine that claim here.

"A celebrity is entitled to vindicate property rights in his or her identity under [§ 1125(a)] of the Lanham Act, because he has an economic interest in his identity akin to that of a traditional trademark holder." Facenda v. N.F.L. Films, Inc., 488 F. Supp. 2d 491, 503 (E.D. Pa. 2007) (citations omitted). A false endorsement case arises when there is "a likelihood of confusion, mistake, or deception" as to the affiliation between the celebrity and the unauthorized user. Id. at 504. This is the case alleged here, where Plaintiffs assert that Defendants' unauthorized use of their images creates the mistaken impression that they are somehow affiliated with Defendants or approve of Defendants' business.

A false endorsement case requires a plaintiff to show that:

(1) its mark is legally protectable; (2) it owns the mark; and (3) the defendant's use of the mark to identify its goods or services is likely to create confusion concerning the plaintiff's sponsorship or

approval of those goods or services.

Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1014 (3d Cir. 2008) (citing Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 437 (3d Cir. 2000)).

Here, Plaintiffs allege they each earn a living by commercializing their identities for use by various brands and services. (Pl. Compl. ¶ 107.) Plaintiffs allege their images, likenesses, and identities are valid and protectable marks of which they have possessed and safeguarded an exclusive right. (Pl. Compl. ¶¶ 108-09.) Therefore, it appears the first two elements are met here – that Plaintiffs possess valid and legally protectable marks which they own.

Plaintiffs have also adequately alleged the third element here. The third element, unlike the first, requires consideration of eight factors, which are:

> 1. the level of recognition that the plaintiff has among the segment of the society for whom the defendant's product is intended;
>
> 2. the relatedness of the fame or success of the plaintiff to the defendant's product;
>
> 3. the similarity of the likeness used by the defendant to the actual plaintiff;
>
> 4. evidence of actual confusion;
>
> 5. marketing channels used;
>
> 6. likely degree of purchaser care;
>
> 7. defendant's intent [in] selecting the plaintiff;

and

8. likelihood of expansion of the product lines.

Id. at 1019-20 (citing and quoting Facenda, 488 F. Supp. 2d at 510; Downing v. Abercrombie & Fitch, 265 F.3d 994, 1007-08 (9th Cir. 2001)) (also noting that the fourth factor should be modified to include "and the length of time the defendant employed the allegedly infringing work before any evidence of actual confusion arose").

Overall, the Court notes these factors strongly favor Plaintiffs based on the allegations made. Plaintiffs are likely to have some recognition among the clientele of Defendants' business because they are models and their fame as models are related in some respect with Defendants' business. The likenesses used by Defendants were Plaintiffs' exact likenesses. Plaintiffs allege there has been actual confusion.[4] (Pl. Compl. ¶ 121.) Plaintiffs also allege that the marketing channels they use were also used by Defendants, namely Facebook. (Pl. Compl. ¶ 119.) Finally, it appears Defendants' intent was willful and deliberate as Defendants used Plaintiffs' images without their consent in order to drive business to their strip club. (Pl. Compl. ¶¶ 123-24.)

---

[4] Plaintiffs do not specify the time period that elapsed between Defendants' unauthorized use and the first instance of actual confusion.

Accordingly, this Court finds there is likelihood of confusion and that Plaintiffs' have adequately pleaded a false endorsement claim against Defendants.

### iii. New Jersey Common Law and Statutory Unfair Competition and False Endorsement

Plaintiffs also bring claims under New Jersey Statute § 56:4-1 and New Jersey common law for unfair competition. Generally, this Court notes that "'unfair competition claims under New Jersey statutory and common law' mirror unfair competition claim 'under . . . the Lanham Act.'" Diversified Indus. v. Vinyl Trends, Inc., No. 13-6194 (JBS/JS), 2016 U.S. Dist. LEXIS 162304, at *14-15 (D.N.J. Nov. 22, 2016) (quoting Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 454 (D.N.J. 2009)). Although this case law does not specifically address a false endorsement claim, this Court finds no New Jersey case law holding even suggesting that state law would provide less protection than the Lanham Act in false endorsement cases. Accordingly, this Court finds that Plaintiffs have adequately alleged New Jersey statutory and common law claims because they have adequately alleged their federal claim.[5]

---

[5] This Court also notes that the general federal test for unfair competition claims is used as the basis for that of a false endorsement claims. See Facenda, 542 F.3d at 1018-20 (describing the modification of the general Lapp factors in conjunction with the Downing factors to create the factors used

11

### b. Whether Plaintiffs are Entitled to Default Judgment

Because it has been determined that Plaintiffs have stated viable causes of action for violations of New Jersey statutory and common law as well as the Lanham Act, it must be determined whether Plaintiffs are entitled to a default judgment. As stated supra, prior to entering judgment on the counts where a valid cause of action has been established, three factors must be considered: (1) prejudice to the plaintiffs if default judgment is not granted; (2) whether the defendants have a meritorious defense; and (3) whether the defendants' delay was the result of culpable misconduct. Chamberlain, 210 F.3d at 164.

#### i. Prejudice to Plaintiffs

Plaintiffs will be prejudiced absent a default judgment because Defendants' failure to respond to Plaintiffs' claims leaves Plaintiffs with no other means to vindicate their claims.

#### ii. Existence of Meritorious Defense

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would

---

for a false endorsement claim in the Third Circuit). Therefore, the Court finds here that because this claim has satisfied the false endorsement factors constructed in Facenda, this claim would also satisfy the Lapp factors. See Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 462-63 (3d Cir. 1983) (listing the factors used to determine likelihood of confusion); Downing v. Abercrombie & Fitch, 265 F.3d 994, 1007-08 (9th Cir. 2001).

12

support recovery by plaintiff or would constitute a complete defense." Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 869-70 (3d Cir. 1984); accord $55,518.05 in U.S. Currency, 728 F.2d at 195; Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982); Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982). Here, it is axiomatic that the Court cannot consider Defendants' defenses because Defendants have failed to respond to this action. See Prudential Ins. Co. of Am. v. Taylor, No. 08-2108, 2009 U.S. Dist. LEXIS 16531, at *3 (D.N.J. Feb. 27, 2009) ("[B]ecause Ms. Ducker has not answered or otherwise appeared in this action, the Court was unable to ascertan whether she has any litigable defenses."); Santiago v. Lucky Lodi Buffet Inc., 2016 U.S. Dist. LEXIS 146089, at *6-7 (D.N.J. 2016) ("[I]n the absence of any responsive pleading and based upon the facts alleged in the Complaint, Defendants do not have a meritorious defense.").

    iii. Whether Defendants' Delay is the Result of Culpable Conduct

Defendants' delay appears to be the result of culpable conduct. "Culpable conduct is dilatory behavior that is willful or in bad faith." Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 123 (3d Cir. 1983). Plaintiff served Defendants with their complaint on November 17, 2017, and Defendants failed to respond by the December 8, 2017 deadline. They have not

13

appeared since.

An affidavit filed by Plaintiffs' counsel on August 6, 2018 reveals the reason for this dilatory behavior.  Plaintiffs' counsel represented a different group of individuals against Defendants in a separate action before this Court.  Defendants' counsel in that case were advised of the new complaint and that set of counsel advised Plaintiffs' counsel that they would not be representing Defendants in the instant case.  Default was entered on April 19, 2018.

Thereafter, Plaintiffs' counsel was contacted by a third-party adjuster for Defendants' insurance carrier and agreed to delay their motion for default judgment pending decision on an insurance dispute between Defendants and their carrier.  Mr. Glassman's letter of December 3, 2018 reveals the insurance carrier denied representation for the Defendants in this action. The letter requested additional time to secure counsel.  As of the time of this opinion, no counsel has entered an appearance for Defendants.  The Court finds this is willful – and therefore culpable – conduct.

Moreover, because Defendants are entities, they are not minors, they are not incompetent, and they have not been engaged in military service.  Therefore, Defendants' failure to appear in the action can be deemed willful, even without the benefit of the facts stated above. See, e.g., Santiago, 2016 U.S. Dist.

LEXIS 146089, at *7 ("Defendants acted culpably as they have been served with the Complaint and Defendants are not infants, otherwise incompetent, or presently engaged in military service.").

Consequently, because the Court has found that Plaintiffs shall be prejudiced if default judgment is not granted, Defendants do not have a meritorious defense, and Defendants' failure to appear in this case is the result of their culpable misconduct, judgment shall be entered in Plaintiffs' favor on their New Jersey statutory and common law claims as well as their Lanham Act claim as described, supra. Thus, this Court will grant Plaintiffs' Motion for Default Judgment.

### c. Damages

In order to determine what damages Plaintiffs are entitled to for their judgment against Defendants, the Court may "conduct hearings or make referrals - preserving any federal statutory right to a jury trial - when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." FED. R. CIV. P. 55(b)(2); cf. FED. R. CIV. P. 55(b)(1) ("If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk - on the plaintiff's request, with an affidavit showing the amount due - must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent

person."); <u>Jonestown Bank & Tr. Co. v. Automated Teller Mach., Servs., Inc.</u>, No. 1:12-cv-01666, 2012 U.S. Dist. LEXIS 172323, at *11 (M.D. Pa. Dec. 4, 2012) (citing 10 James Wm. Moore, et al., Moore's Federal Practice § 55.32[2][c] (Matthew Bender ed. 2010) ("[T]he 'hearing' may be one in which the court asks the parties to submit affidavits and other materials from which the court can decide the issue.")).

In this case, the Court finds it need not conduct an actual hearing as Plaintiffs have submitted declarations and have retained an expert who has opined in a declaration on the amount of damages in this case. See <u>Bds. of Trs. of the Operating Eng'rs Local 825 Welfare Fund v. Robert Silagy Landscaping Inc.</u>, No. 06-1795, 2006 U.S. Dist. LEXIS 82475, at *9-10 (D.N.J. Nov. 9, 2006) ("Even when faced with claims for uncertain damages a district court may still, using its discretion, decline to hold a Rule 55(b)(2) hearing, particularly where the 'amount claimed [is] capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" (quoting <u>KPS Assocs., Inc. v. Designs by FMC, Inc.</u>, 318 F.3d 1, 19 (1st Cir. 2003))).

However, this Court finds Plaintiffs' Motion for Default Judgment to be deficient as it relates to the specificity of its damages calculations. Plaintiffs cite to no statutes or case law as to why the fair market value of $520,000 stated by its

16

damages expert, Stephen Chamberlain, is compensable. In addition, while Mr. Chamberlain appears to have the requisite experience to render a valid opinion on the value of Plaintiffs' images and describes his methodology generally, the current submissions before the Court do not explain how the methodology was used to compute the damages for each Plaintiff.[6] He simply concludes without further explanation that damages range from a low of $40,000 for Ms. Mayes to a high of $150,000 for Ms. Underwood.

In sum, Plaintiffs claim for damages should be tethered to the ad damnun portion of their complaint and the claims the Court has allowed. It may be that each count sustained by the Court in this Opinion allows for the full measure of damages claimed or only some. This should be for the Plaintiff to explain and not the Court to determine. Second, Plaintiffs' submission should parse out how each amount of damages were calculated for each individual Plaintiff. Thus, Plaintiffs will be directed to file a new brief that specifically cites the nature of the damages presented, which claim allowed by the

---

[6] There is reason to believe that Plaintiffs' expert prepared the requisite proofs and counsel inadvertently failed to place them on the record. A table of contents appended to Chamberlain's declaration reveals an expert report of 55 pages in length, the latter portion of which apparently contains an "Individual Analysis" for each Plaintiff. However, the report actually filed is only 21 pages long and appears to omit everything past page 14 of the full report. See Doc. No. 12-8, page 9.

Court to proceed to judgment authorizes those damages, and what evidence – from the declarations already filed or from supplemental declarations – supports those particular damages.

## CONCLUSION

For the reasons stated herein, this Court will grant Plaintiffs' Motion for Default Judgment. Plaintiffs are required, as described in this Opinion and the accompanying Order, to submit supplemental briefing on damages before final judgment will be entered.[7]

An appropriate Order will be entered.

Date: February 11, 2019      s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.

---

[7] Plaintiff's proposed form of judgment (Doc. No. 12-9) asks the Court to impose a full joint and several judgment of $520,000 in favor of each of the Plaintiffs even though each of the Plaintiffs' damages are clearly quantifiably different and personal to each. Plaintiffs offer no justification as to why one plaintiff should be entitled to damages suffered by another. Plaintiffs are invited to submit a new proposed form of final judgment for each Plaintiff for the amount each individually claims in damages (which may be entered jointly and severally against all Defendants) or explain why full judgment of $520,000 should be entered in favor of each Plaintiff.