UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

KIM COZZENS, JESSE GOLDEN,
JESSICA HINTON, URSULA MAYES,
SARA UNDERWOOD, and TIFFANY
TOTH GRAY,

        Plaintiffs,

   v.

DAVEJOE RE, LLC, DAVEJOE,
LLC, and MONKEYTOES, LLC
d/b/a KASHMIR GENTLEMEN'S
CLUB,

        Defendants.

Civil No. 17-11535 (NLH/JS)

**OPINION**

**FILED UNDER SEAL**

---

**APPEARANCES:**

JONAS PALMER MANN
BARON & BUDD, P.C.
ENCINO PLAZA
15910 VENTURA BLVD., STE. 1600
ENCINO, CA 91436

    *Attorney for Plaintiffs Kim Cozzens, Jessica Hinton, Ursula Mayes, Sara Underwood, and Tiffany Toth Gray.*

**HILLMAN, District Judge**

    This case concerns the unauthorized use of particular models' likenesses in advertising.  Presently before the Court is Plaintiffs' Supplemental Brief in Support of the Motion for Default Judgment and their Motion to Seal.  Defendants have not responded to this motion.  For the reasons stated herein, it

will be granted.

## BACKGROUND

This Court adopts as background the facts described in its February 11, 2019 Opinion. On the same day as the Opinion, this Court issued an Order directing Plaintiffs to file a supplemental brief within thirty days. The Court directed Plaintiffs to brief more thoroughly the appropriate measure of damages in this case and to provide the full expert report of Stephen Chamberlain, of which the Court previously received only a portion. As a result, while default judgment was entered as to liability, the Court withheld judgment as to damages. It is to the issue of damages that the Court now turns.

## ANALYSIS

### A.   Subject Matter Jurisdiction

This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over the New Jersey state law claims pursuant to 28 U.S.C. § 1367.

### B. Standard for Imposition of Damages on Default Judgment

The Court restates the standard described in the February 11, 2019 Opinion. In order to determine what damages Plaintiffs are entitled to for their judgment against Defendants, the Court may "conduct hearings or make referrals - preserving any federal statutory right to a jury trial - when, to enter or effectuate

judgment, it needs to . . . determine the amount of damages." FED. R. CIV. P. 55(b)(2); cf. FED. R. CIV. P. 55(b)(1) ("If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk - on the plaintiff's request, with an affidavit showing the amount due - must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."); Jonestown Bank & Tr. Co. v. Automated Teller Mach., Servs., Inc., No. 1:12-cv-01666, 2012 U.S. Dist. LEXIS 172323, at *11 (M.D. Pa. Dec. 4, 2012) (citing 10 James Wm. Moore, et al., Moore's Federal Practice § 55.32[2][c] (Matthew Bender ed. 2010) ("[T]he 'hearing' may be one in which the court asks the parties to submit affidavits and other materials from which the court can decide the issue.")).

**C. Damages**

As detailed in its February 11, 2019 Opinion, this Court found Plaintiffs have stated causes of action under (1) New Jersey common law for misappropriation of likeness, (2) federal statutory law for false endorsement, and (3) New Jersey statutory and common law for false endorsement. The Court has found Defendants liable for each of these claims. It is now time to determine the amount of damages.

At the outset, the Court notes again that it need not conduct an actual hearing as Plaintiffs have submitted

3

declarations and have retained an expert who has opined in a declaration on the amount of damages in this case.  See Bds. of Trs. of the Operating Eng'rs Local 825 Welfare Fund v. Robert Silagy Landscaping Inc., No. 06-1795, 2006 U.S. Dist. LEXIS 82475, at *9-10 (D.N.J. Nov. 9, 2006) ("Even when faced with claims for uncertain damages a district court may still, using its discretion, decline to hold a Rule 55(b)(2) hearing, particularly where the 'amount claimed [is] capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" (quoting KPS Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003))).

In order to determine damages, the Court addresses whether Plaintiffs have cured the deficiencies noted by the Court in its February 11, 2019 Opinion.  One deficiency noted by the Court was that Plaintiffs' expert, Stephen Chamberlain did not provide the methodology used in calculating damages for each Plaintiff. The Court is now satisfied that Chamberlain's expertise and methodology may be relied upon.  As Chamberlain explains in his supplemental declaration, to determine pricing (and therefore damages) he considered Plaintiffs' desirability, work history, Defendants' business, the "embarrassment factor" from association with the Defendants' advertisements, history of businesses which sought Plaintiffs' services, exposure, usage, "such as advertising, social media, third party promotion,

4

branding, coupon, extra usage, or corporate identity," the length of exposure, and the nature, duration, and location of any production. (Chamberlain Suppl. Decl. ¶ 12.) Considering these factors for each Plaintiff, Chamberlain came up with a "fair market fee for the use of each" Plaintiffs' image and then multiplied that number by "each image used by the number of separate types of usage." (Chamberlain Suppl. Decl. ¶ 13.) Moreover, Plaintiff has filed Chamberlain's entire expert report with the Court, which includes the data and methodology relied upon by Chamberlain in coming to his conclusions. Plaintiffs have cured this deficiency noted by the Court.

Another deficiency noted was that Plaintiffs did not cite case law or statutory bases for the imposition of the damages requested. Because Plaintiffs did not do so, the Court could not properly determine whether the damages requested were appropriate. Plaintiffs have cured this deficiency as well.

As for a misappropriation of likeness claim under New Jersey common law, the measure of damages is the fair market value. Canessa v. J.I. Kislak, Inc., 235 A.2d 62, 75 (N.J. Super. Ct. Law Div. 1967) ("[H]owever little or much plaintiff's likeness and name may be worth, defendant, who has appropriated them for his commercial benefit, should be made to pay for what he has taken, whatever it may be worth."); Grant v. Esquire, Inc., 367 F. Supp. 876, 881 (S.D.N.Y. 1973) (stating in a

5

misappropriation of likeness action that a plaintiff may "recover the fair market value of the use of the purposes of trade of his face, name and reputation").

As for the federal and state law claims for false endorsement, fair market value of what was lost is also appropriate. As the Court articulated in its previous Opinion, the federal and state claims are analyzed under the federal standard. The Lanham Act allows for "any damages sustained by the plaintiff." 15 U.S.C. § 1117(a)(2). In a trademark infringement action considered on default judgment, a court within this District considered the proper measure of damages under § 1117. N.V.E., Inc. v. Day, No. 07-4283, 2009 U.S. Dist. LEXIS 72934, at *1-3, 7-13 (D.N.J. Aug. 13, 2009). In that case, the court specifically listed "the revenues lost by the plaintiff" as a proper consideration in determining damages. Id. at *9. More specifically, the Southern District of New York, when presented with the question of damages in a false endorsement case has stated that damages should be measured by "the market value of the license fee that [plaintiffs] were entitled to charge for their endorsement." Beastie Boys v. Monster Energy Co., 66 F. Supp. 3d 424, 465 (S.D.N.Y. 2014). The Court finds under both federal and state law, for false endorsement, a correct measure of damages would be the fair market value of what would have been charged.

Finally, the Court noted that Plaintiffs had not described with the requisite particularity how Chamberlain's methodology and Defendants' use amounted to the numbers cited for each Plaintiff. Plaintiff has cured the deficiency here and the Court discussed the methodology supra. As was stated supra, the fair market value generally depends on (1) the type of use, (2) the amount of use (number of images and how broadly dispersed), and (3) the individual's historic rates for that type and amount of use. The Court will walk through the calculation of each Plaintiffs' damages in order to finally determine whether damages as to each Plaintiff is reasonable.

As to Kimberly Cozzens, Chamberlain finds that $90,000 is the fair market value for the unauthorized use by Defendants. Based on Cozzens' historical rates, Chamberlain determines that $30,000 is the appropriate fee for the advertising[1] use of the image, another $30,000 is the appropriate fee for sharing it on social media[2], and another $30,000 is the appropriate fee for the

---

[1] As defined by Chamberlain, advertising is the "use of an image to promote a business, company or event, on a website owned, controlled or contributed to by a client or in a magazine or publication or anywhere the business or product name of the client is associated or attached with the image." (Pls.' Suppl. Mot. for Default J., Ex. A 7.)

[2] As defined by Chamberlain, social media "includes, but is not limited to, Facebook, Twitter, Instagram, Yelp, YouTube, Snapchat and Tumblr." (Pls.' Suppl. Mot. for Default J., Ex. A 7.)

branding[3] associated with the image.  The Court finds the total of $90,000 is an appropriate measure of damages for Cozzens based on Chamberlain's methodology and the historical rates charge by Cozzens.

As to Jesse Golden, Chamberlain finds that $60,000 is the fair market value for the unauthorized use by Defendants.  Based on Golden's historical rates, Chamberlain determines that $20,000 is the appropriate fee for the advertising use of the image, another $20,000 is the appropriate fee for sharing it on social media, and another $20,000 is the appropriate fee for the branding associated with the image.  The Court finds the total of $60,000 is an appropriate measure of damages for Golden based on Chamberlain's methodology and the historical rates charge by Golden.

As to Jessica Hinton, Chamberlain finds that $90,000 is the fair market value for the unauthorized use by Defendants.  Based on Hinton's historical rates, Chamberlain determines that $30,000 is the appropriate fee for the advertising use of the image, another $30,000 is the appropriate fee for sharing it on

---

[3] As defined by Chamberlain, branding "includes either manipulating an image to effectively 'brand' a company and suggest a model/talent is employed by the entity, or attaching dialogue or hash tag (#) which references, describes, labels or effectively categorizes a model and associates her/him to the particular product, business, or consumer experience, or similar products, business and consumer experiences." (Pls.' Suppl. Mot. for Default J., Ex. A 7.)

social media, and another $30,000 is the appropriate fee for the use of the image to promote a competition run by Defendants.[4] The Court finds the total of $90,000 is an appropriate measure of damages for Hinton based on Chamberlain's methodology and the historical rates charge by Hinton.

As to Ursula Mayes, Chamberlain finds that $40,000 is the fair market value for the unauthorized use by Defendants. Based on Mayes' historical rates, Chamberlain determines that $20,000 is the appropriate fee for the advertising use of the image and another $20,000 is the appropriate fee for sharing it on social media. The Court finds the total of $40,000 is an appropriate measure of damages for Mayes based on Chamberlain's methodology and the historical rates charge by Mayes.

As to Sara Underwood, Chamberlain finds that $150,000 is the fair market value for the unauthorized use by Defendants. Based on Underwood's historical rates, Chamberlain determines that $50,000 is the appropriate fee for the advertising use of the image, another $50,000 is the appropriate fee for sharing it on social media, and another $50,000 is the appropriate fee for the branding associated with the image. The Court finds the total of $150,000 is an appropriate measure of damages for

---

[4] Chamberlain defines this type of use as "extra" use which includes "billboards, flyers, TV usage, movies, downloads, posters, hangtags, banners and decorations." (Pls.' Suppl. Mot. for Default J., Ex. A 7.)

9

Underwood based on Chamberlain's methodology and the historical rates charge by Underwood.

As to Tiffany Toth Gray, Chamberlain finds that $90,000 is the fair market value for the unauthorized use by Defendants. Based on Gray's historical rates, Chamberlain determines that $30,000 is the appropriate fee for the advertising use of the image, another $30,000 is the appropriate fee for sharing it on social media, and another $30,000 is the appropriate fee for the coupon[5] (offering no cover charge and reduced price for a bucket of Corona beer). The Court finds the total of $90,000 is an appropriate measure of damages for Gray based on Chamberlain's methodology and the historical rates charge by Gray.

**D. Motion to Seal**

Plaintiffs have also submitted a motion to seal certain materials filed with the Court. Plaintiffs request that Exhibit A to the Supplemental Declaration of Stephen Chamberlain, the expert report, be permanently sealed. Plaintiffs argue that portions of the expert report contain confidential information concerning proprietary business information and earnings history that if exposed to their competitors would create an unfair advantage. The Court agrees. This type of information is

---

[5] Chamberlain defines coupon as including, but not limited to, "use of an image to offer discounts for entry, participation to a club, party or event or discounts on products." (Pls.' Suppl. Mot. for Default J., Ex. A 7.)

10

present.  Moreover, the fact that Plaintiffs previously filed a portion of this expert report, unsealed, on the docket means that sealing the full expert report is the least restrictive method.  Accordingly, for good cause shown, the Court finds Plaintiff's have satisfied the requirements of Local Civil Rule 5.3(c).

## CONCLUSION

For the foregoing reasons, this Court will grant Plaintiffs' Supplemental Motion for Default Judgment and Motion to Seal.  Final judgment will be entered in the amounts discussed <u>supra</u> for each Plaintiff against all Defendants.  However, while the Defendants' liability is joint and several as to each Plaintiff, each individual Plaintiffs' damages are distinct and personal to each.  Therefore, the Plaintiffs will be directed to submit a final form of judgment for each Plaintiff.

An appropriate Order will be entered.


Date: <u>April 8, 2019</u>                s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.